UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

JOSEPH CEDRIC SHELTON

VERSUS

BOARD OF SUPERVISORS OF SOUTHERN
UNIVERSITY AND AGRICULTURAL AND
MECHANICAL COLLEGE, ET AL.

CIVIL ACTION

NO. 09-cv-968-JJB

**RULING ON DEFENDANT TONY CLAYTON'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is defendant Tony Clayton's motion for summary judgment against plaintiff Joseph Cedric Shelton. (Doc. 95). Shelton filed an opposition (Doc. 101), and Clayton filed a reply (Doc. 104). Jurisdiction exists under 28 U.S.C. §§ 1331 and 1367.

I.

Shelton worked at Southern University and was terminated on August 22, 2009, under auspices of a plan to reorganize Southern's workforce due to impending budget cuts. Shelton had previously testified in federal court in *Slaughter v. Bd. of Sup's of Southern Univ.*, No. 07-cv-739-RET (M.D. La.), regarding sexual harassment complaints made in the workplace and had also described instances where he had been subject to sexual harassment by a member of Southern's Board of Supervisors.

Clayton served as the chairman of the Board of Supervisors at Southern which eventually adopted the reorganization plan that cut Shelton's position. Clayton, however, voted against adopting it. Nevertheless, Clayton had told Shelton numerous times of his disappointment in Shelton's testimony in the *Slaughter* matter and, according to Shelton, made threats of recrimination and derogatory public comments against Shelton.

1

The Court previously denied Clayton's motion for summary judgment, finding genuine disputes of material fact existed regarding his motivation to retaliate against Shelton for his testimony as well as his causal connection to Shelton's inclusion in the reorganizing plan. (Ruling, Doc. 56). However, the Court expressly reserved ruling on whether Clayton's vote against adopting the reorganization plan would vitiate his potential liability under § 1983 for Shelton's termination. (*Id.* at 23, n. 6). This summary judgment motion addresses that issue.[1]

II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty*

---

[1] The Court notes the untimeliness of this motion. The Court set June 27, 2011, as the dispositive motion deadline. (Doc. 39). Clayton has been represented by counsel from the outset and did not seek leave of the Court to file this motion on March 23, 2012, almost nine months past the established deadline. Moreover, the Court has already held a pretrial conference (*see* Doc. 57) and the parties have already jointly stipulated to a pretrial order (Doc. 55). While the Court did not strike this motion (*see* Doc. 99) because the Court's previous ruling had left open an issue which the motion addressed (*see* Doc. 56, at 23, n. 6), counsel for Clayton would do well to consult the previous scheduling orders entered by this Court and keep in mind Fed. Rule Civ. P. 16(f) before filing such an untimely motion without seeking leave of the Court.

*Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

III.

Clayton argues Shelton has presented no affirmative evidence tying him to the formulation or adoption of the reorganization plan, and he also argues that Shelton has failed to even allege Clayton encouraged or pressured fellow Board members to vote in favor of the plan. In support, Clayton introduces two new pieces of evidence. Unlike the original summary judgment motion, Clayton introduces evidence bearing directly on this issue. First, he introduces his declaration denying any involvement in Shelton's inclusion in the reorganization plan or any participation in activity calculated to pass the plan. (Clayton Declaration, Doc. 95-3). Second, he introduces the declaration of Dr. Kassie Freeman, the then-interim president of Southern who sponsored the reorganization plan. She also avers Clayton never asked, encouraged or pressured her to include Shelton's position or Shelton himself in the reorganization plan. (Freeman Declaration, Doc. 95-2).

Shelton points out that, from the time Freeman was named interim president on July 1, 2009 (Freeman Decl., Doc. 95-2, ¶ 1), to the time she first presented the reorganization plan to the Board on July 24, 2009 (*id.*, ¶ 4), a period of merely 23 days, Freeman could not have reasonably compiled such an extensive reorganization plan without help. Shelton alleges that

3

Clayton provided input on the plan and twice suggested, subsequent to the reorganization plan's presentation, that he should talk to Dr. Freeman and pledge allegiance to her. (Shelton Aff., Doc. 48-3, ¶¶ 28-32). The fact that Clayton had assumed the chairmanship of the Board prior to Freeman's elevation to the interim presidency creates a plausible inference he might have played a more crucial role in the reorganization plan than his declaration lets on. As his alleged conversations with Shelton strongly imply, he retained input during the reorganization process.

At a minimum, Freeman was familiar with the *Slaughter* affair when she was selected to lead Southern on an interim basis. Even without an explicit agreement with Clayton, as their declarations aver, a jury would be entitled to infer one from the circumstances. Viewed in the light most favorable to Shelton and drawing all reasonable inferences in his favor, a jury could find Freeman included Shelton in the reorganization plan to curry favor with Clayton, whose help she would obviously need to navigate the potentially treacherous waters any university president must tread with the Board overseeing her. Moreover, according to Shelton's affidavit, Clayton repeatedly threatened Shelton's job if he did not kowtow to Clayton's pressures to retract his *Slaughter* testimony or at least keep quiet about it. The jury will be in the best position to evaluate these conflicting statements and give credence to the witnesses it deems most credible.

Clayton nevertheless urges that *James v. Texas Collin County*, 535 F.3d 365 (5th Cir. 2008), as discussed in *Juarez v. Aguilar*, 666 F.3d 325 (5th Cir. 2011), forecloses Shelton from holding Clayton liable because of his vote against the reorganization plan. But *James* is inapposite to the question presented here. *James* involved a municipal employee who brought a § 1983 First Amendment retaliation claim against county commissioners, his putative employers. *Juarez*, 666 F.3d at 334. The Fifth Circuit found the county commissioners were not final

decision-makers in the employee's termination, even though something less than a formal vote could precipitate an adverse employment decision. *Id.* at 334-35. Rather, the Court found the lack of a formal vote simply one factor to consider, and it found summary judgment for the commissioners was appropriate because the evidence presented showed the county commission's administrative director, rather than the commissioners themselves, terminated the plaintiff. *Id.*; *see also James*, 535 F.3d at 374. Because the commissioners did not agree to terminate the plaintiff or order the administrative director to carry out the termination, summary judgment in that body's favor was proper. *Id.*; *see also James*, 535 F.3d at 374.

Thus, *James* teaches an adverse employment action may arise from a formal vote or an informal agreement. It does not support the blanket proposition advanced by defendants that the formality of a "no" vote for a plan with widespread support could completely whitewash a personal history allegedly littered with evidence of retaliatory motives and threats of reprisal. Members of public decision-making bodies such as a university board have wide latitude to adopt measures rationally related to advancing the goals of the institutions and people they serve. But the policies of § 1983 (and, for that matter, the abuse of rights doctrine) would be ill-served if pervasive evidence of retaliatory motive, as alleged here, could be cured through the mere expedient of casting a vote against a plan seemingly pre-ordained for passage.

As the evidence in this case so far demonstrates, genuine disputes of fact remain regarding Clayton's role in the formulation and adoption of the reorganization plan. A reasonable jury could find his influence over that body and his strong, apparently well-known views regarding Shelton's testimony in the *Slaughter* case to be a sufficient basis from which to infer a causal relationship between Shelton's termination and his protected activity of testifying in federal court. Shelton has not uncovered a smoking gun, but when viewing the facts in the

5

light most favorable to him, the circumstantial evidence presented could permit a jury to find Clayton's fingerprints on the reorganization plan. Thus, summary judgment is not warranted on either the § 1983 retaliation claim or the abuse of rights claim.

IV.

Accordingly, it is ORDERED that defendant Tony Clayton's motion for summary judgment (Doc. 95) is DENIED.

Signed in Baton Rouge, Louisiana, on May 18, 2012.

_____
**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**